## Case No. 16,935.

VICTOR SEWING-MACH. CO. v. LANGHAM et al.

[9 Biss. 183.] [1]

Circuit Court, E. D. Wisconsin. Nov., 1879.

DISCHARGE OF SURETIES — CHANGE OF CONTRACT.

Where A. and B. became sureties for the faithful performance by C. of a contract with D., by which C. was to receive a salary, and the expenses of the business were to be borne by D.: Held, that the sureties were discharged by a subsequent alteration of the contract so that C. was to pay the expenses and sell on commission.

[1] [Reported by Hon. Samuel Blatchford, District Judge, and here reprinted by permission.]

[1] [Reported by Josiah H. Bissell, Esq., and here reprinted by permission.]

This was an action on a surety bond executed by the defendants [John Langham and others] to secure the faithful performance by the defendant Adams of a supplementary contract entered into by him with one Joslin, who acted as the agent of the plaintiff. This contract was made in April, 1873, and provided that Adams should sell sewing machines to be furnished by Joslin, receiving a salary of $50 per month and $3 on each machine sold; Joslin to pay office expenses. In June subsequently, without the knowledge or consent of the sureties, this salary contract was waived, and it was agreed that Adams should receive a commission of 40 per cent. on all machines sold by him, he to pay all the expenses of the business. The complaint set out the bond and default of Adams to the extent of $8,000. The defendants pleaded the alteration of the contract as releasing the liability of the sureties. The decision was upon a demurrer to the answer.

Finches, Lynde & Miller, for plaintiff.
Jenkins, Elliott & Winkler, for defendants.

DYER, District Judge. The answer alleges full performance of the contract by Adams up to June 3, 1873, and a settlement and payment of all moneys due to that date; further, that without the knowledge or privity of the defendant sureties, the contract was by agreement between Joslin and Adams altered as follows: that it was then and there agreed between them that the agreement by which Adams was to receive a stated salary as compensation for his services, and by which Joslin was to pay the rent of office and other necessary expenses of the business, should be, and the same was, then and there abrogated and annulled, and instead thereof, it was agreed between them that Adams should thereafter pay all the expenses of the business, and should receive a commission of 40 per cent. upon the retail prices of all machines sold; all without the knowledge, privity or consent of the defendant sureties or either of them, and that thereafter the business was carried on under such changed and modified contract, and not otherwise, and that all deficit, if any, in the accounts of Adams, and all failure on his part to account for property of Joslin or any other party, under any contract made between said Adams and said Joslin, if any such failure occurred, did in fact arise and accrue after the change and alteration of said contract.

Thus it is charged that the agreement was changed by the principal parties, so that Adams should pay all the expenses of the business, and should in lieu of a salary receive a commission on his sales, and that the default of Adams, if any, occurred after this alteration; and the question raised by the demurrer is, whether this was a material alteration, affecting the liability of the sureties. I am of the opinion that it was. By the contract before the alteration complained of,

Adams was to receive a salary and the expenses of the business were to be borne by Joslin. Now it might well be that the sureties would be willing to become obligated for the performance of such a contract by Adams, and unwilling to assume liability upon a contract under which Adams was to defray expenses and sell on commission. The contract as altered would throw upon Adams expenses and risks that he would be free from under the contract not so changed. And it would seem that when the contract was altered the agency became in some respects essentially changed and the risk of the sureties was increased.

The case of Amicable Mut. Life Ins. Co. v. Sedgwick, 110 Mass. 163, is relied upon by counsel for plaintiff. In that case an insurance company appointed an agent, to be paid by commissions. The agent gave bond faithfully to conform to all instructions of the company and to remit to them all sums received, less his commissions. The sureties on the bond knew the terms of the appointment. Subsequently the company and the agent agreed, without the knowledge of the sureties, that he should receive increased commissions but give up all claim on a certain guaranty previously given by the company that the commissions should amount to a specified sum monthly. It was held that this change in the mode of compensation did not discharge the sureties. It is evident here that the change in the agreement imposed no new duties or obligations or expenses upon the agent. He was still to collect and remit moneys and to receive his compensation in the form of commissions as under the original agreement. The change was merely in an increase of his commissions and a relinquishment of his claim on the guaranty. The court in its opinion points out the distinction between such a change and a change in compensation from a salary to a commission. The change as to remuneration did not subject the parties to any greater or other risks than they originally intended to assume. It is to be observed further, that the bond in the case cited, was a general one, while the bond in the case at bar rests upon a particular contract which is mentioned therein. In the respects mentioned, the case seems distinguishable from the one under consideration.

In Northwestern R. Co. v. Whinray, 10 Exch. 75, the facts were these: The defendant as surety executed a bond to the railway company, which, after reciting that the company had agreed to appoint L. as their agent for the purpose of selling coal, at a yearly salary of £100, was conditioned for the due accounting by L. of all moneys received by him for the use of the company. L. performed the duties of such agent at the salary specified, until a certain time, when it was agreed between L. and the company to substitute for such salary a commission of 6d per ton on all coal for which he should ob-

tain orders. After this change in the agreement L. became indebted to the company for sums which he did not pay over, and the company having sued the defendant on the bond, it was held that the change in the contract from an agency at a salary to an agency with compensation by commissions so altered the relation between the principal and sureties that the latter were not responsible for the former's default.

The facts of the case at bar as alleged in the answer, appear as strongly to sustain a similar conclusion here. For here is a contract by virtue of which Adams was to receive compensation by way of salary, and the expenses of the business were to be defrayed by Joslin. And it was for the performance of such a contract that the defendant sureties became bound. It is then charged that at a time subsequent the contract was without the knowledge of the sureties changed so that Adams was to receive compensation by way of commission and was to pay the expenses of the business. The similarity between this case and that last cited is such as to lead me to adopt the latter as an authority upon the point involved. It is true that the character and amount of the compensation to be paid to the agent in that case were recited in the bond, and therefore the recital was to be looked at as part of the contract. But I do not regard this as weakening the application of the case as an authority, to that at bar, because here the compensation is stated in the contract and the contract is referred to in the bond as the basis of defendants' liability, and is really part of the bond for the purpose of determining what liability the sureties have assumed. Demurrer overruled.

NOTE. See further that a principal can make no change in an agreement so as to bind his sureties, without their assent. Burt v. McFadden, 58 Ill. 479; Chapman v. McGrew, 20 Ill. 101. The undertaking of a surety is construed strictly; his liability will not be extended by implication. Myers v. First Nat. Bank, 78 Ill. 257; Reynolds v. Hall, 1 Scam. 35; Phillips v. Singer Manuf'g Co., 88 Ill. 305; Millar v. Stewart, 9 Wheat. [22 U. S.] 680.