Albert Albee, Trustee, and George L. Murphy, Plaintiffs in Error, v. R. A. Gross et al., Defendants in Error.

**Gen. No. 7,881.**

Opinion filed September 4, 1928.

FRANK E. MAYNARD and FRED B. BENNETT, for plaintiffs in error.

KNIGHT & SWENSON, for defendants in error.

MR. JUSTICE JETT delivered the opinion of the court.

This was a bill filed by Albert Albee, as trustee, and George L. Murphy, complainants, to foreclose a trust deed against R. A. Gross, Ada M. Gross, Charles F. Brandt and Della Brandt, et al. The record shows that on June 30, 1914, Albert Albee was the owner of the premises described in a certain trust deed sought to be foreclosed in this proceeding, being a farm consisting of approximately 246 acres of land, situated in Winnebago county, Illinois; that on said date of June 30, 1914, the said Albert Albee sold said land to the defendant R. A. Gross and conveyed the same by warranty deed bearing date June 30, 1914; a trust deed was given and signed by the said R. A. Gross, as and for a part of the purchase price of said premises, and the notes secured by said trust deed were in a total principal sum of $22,000.

It is further shown that R. A. Gross and Ada M. Gross, his wife, sold the premises described in the bill of complaint on July 8, 1914, to Charles F. Brandt, one of the defendants, and conveyed the same by warranty deed, which warranty deed provided as follows, to wit: "Subject, however, to one certain trust deed

conveying the premises hereinabove described, dated June 30th, 1914, and filed for record July 7, 1914, in the office of the recorder of deeds of Winnebago county, Illinois, as document No. 98696, and the notes thereby secured totaling the sum of $22,000, which said trust deed and the notes thereby secured, the grantee herein hereby assumes and agrees to pay as part payment of the purchase price for the premises hereby conveyed.'' It is further shown that Charles F. Brandt purchased the said premises in question with the full knowledge of said assumption clause and accepted said warranty deed with the express understanding that the said $22,000 trust deed assumed by him was as and for a part of the purchase price of said lands.

It is further shown that George A. Allen purchased the premises in question from the said Charles F. Brandt and Della Brandt, his wife, by warranty deed, said warranty deed contained an assumption clause similar to the one above quoted appearing in the deed of R. A. Gross and wife to Charles F. Brandt which deed was accepted by George A. Allen, and the said Allen thereby agreed to pay said trust deed and notes, aggregating $22,000, as so much of the purchase price of the said property.

It is further shown that on February 28, 1925, the said George A. Allen was still the owner of the premises described in the bill of complaint. Said note, secured by said trust deed had become due and payable. George A. Allen was unable to pay the said note and desired an extension of the time within which to make payment thereof. The said George A. Allen, without the knowledge of R. A. Gross, Ada M. Gross, Charles F. Brandt and Della Brandt, defendants in error, applied to one George L. Murphy, banker, who held one of said trust deed notes, secured by said trust deed in question, for an extension of time for a period of one year within which to pay said obligation. George L. Murphy, acting as agent for the several

holders of the trust notes, other than Gross and Brandt, had prepared an agreement to extend the time of payment, and instructed Albee, trustee, to sign the extension agreement for one year, and that the said George A. Allen came to the bank of Murphy, at Woodstock, and signed said extension agreement, and on a later date Albee, trustee at said bank of said Murphy, signed said extension agreement at the request of Murphy.

An agreement was entered into and signed whereby the loan was to be extended for one year in consideration of Allen paying six per cent instead of five per cent, at the rate of interest provided in said notes, said interest to be payable quarterly at the American National Bank at Woodstock. A written contract was entered into between Albee, trustee, and Allen, the debtor; neither Gross nor Brandt knew anything about the agreement at the time it was entered into.

When the period of extension had expired the notes remained unpaid. A bill to foreclose was then filed by the trustee and Murphy. Gross and Brandt were included among the parties defendant. They defended against the bill on the ground that they did not consent to the extension of time of payment of the notes secured by the trust deed; that the relation between them and Allen was that of principal and surety, and the extension of time, based upon a valuable consideration, without their knowledge and consent, worked a release of their liability.

After the issue was made up the cause was referred to the master in chancery to take proof and report findings as to the law and fact; the master found in conformity with the prayer of the bill, recommending decree of foreclosure, and also that in the event that the real estate in question should not sell for enough to satisfy a decree, that the defendants R. A. Gross, Charles F. Brandt and George A. Allen be held to be liable for any deficiency in the amount to be paid.

The defendants in error, R. A. Gross, Ada M. Gross, Charles F. Brandt and Della Brandt, filed objections to the master's report. The master heard the objections to his report and overruled the same. After the master filed his report in the circuit court, and overruled the objections of the defendants in error, the defendants in error then asked leave of the circuit court that the objections filed before the master stand and be considered as exceptions to the master's report in the circuit court. This was allowed by the court and the objections filed before the master stood as exceptions to the report of the master in the circuit court.

The court heard the objections and after considering the same, entered a decree sustaining the objections to the master's report; to that part of said report which finds the defendants in error, R. A. Gross, Ada M. Gross, Charles F. Brandt and Della Brandt, original mortgagors, and mortgagor's grantees, liable for deficiency decree, but the court found that the master's report as to all other matters should be approved and confirmed by the court, and decreed accordingly.

The sole issue therefore presented for the consideration of the court is, Did the extension agreement, dated February 28, 1925, signed by Albert Albee, trustee, and George A. Allen, then owner of the premises in question, made for an added consideration of one per cent, and without the knowledge and consent of the defendants in error, R. A. Gross, Ada M. Gross, Charles F. Brandt and Della Brandt, release them from liability for the payment of the trust deed notes secured by the trust deed, or from liability under deficiency decree upon foreclosure and sale of the premises in question?

After an investigation of the authorities bearing upon the contention of the respective parties to this proceeding, we are convinced that the decisions of the courts have not been uniform. Upon an examination

of the cases in this State, we find that the ones sustaining the contention of plaintiffs in error are two, decided by the Appellate Court of the first district, viz., *Morganroth v. Pink,* 227 Ill. App. 244, and *Elwell v. Hicks,* 180 Ill. App. 554. There are two cases decided by the first district, viz., *Johnston v. Paltzer,* 100 Ill. App. 171, and *Bascom v. Fox,* 167 Ill. App. 1, and one in the second district, *Wyatt v. Dufrene,* 106 Ill. App. 214, and *Brosseau v. Lowy,* 209 Ill. 405, which sustain the contention of the defendants in error, so at the outset we have opinions in the Supreme Court and different districts of the Appellate Court, disagreeing as to what the rule should be, under the state of facts arising out of the record in this cause.

Much reliance is placed by plaintiffs in error upon *Morganroth v. Pink, supra.* Plaintiffs in error insist that the rule announced in *Morganroth v. Pink, supra,* was approved by the Supreme Court by its act in denying a petition for writ of certiorari. An examination of the case, in our judgment, discloses that the reason for the petition of certiorari being denied was that all the points of law raised in the latter opinion had been presented to the Appellate Court for the first district, in said case as reported in *Morganroth v. Pink,* 216 Ill. App. 158. There was nothing new in the case as indicated in the opinion, when it subsequently was decided in the Appellate Court, where the court said in *Morganroth v. Pink,* 227 Ill. App. at page 247: "Defendant's counsel now forcefully argue against our decision, but we must adhere to the rule that whatever was determined by this court on the former appeal is *res adjudicata* and the law of this case, and is binding on the parties, the trial court and this court in this case for all time."

An examination of the *Morganroth* and the *Elwell* cases indicate that the decisions in both cases are principally based upon an interpretation placed upon *Fish v. Glover,* 154 Ill. 86.

*Fish v. Glover,* is a case in which the mortgagor conveyed the mortgaged premises without the knowledge of the mortgagee, and sought to excuse himself from the primary liability under section 1, Revised Statutes, chapter 132, Cahill's St. ch. 132, ¶ 1, on the theory that he was a surety merely because of the assignment. The court held that the statute referred to a contract in writing, binding sureties, and not to contracts of suretyship, arising by implication.

In the present case there is a written document, to wit, an agreement for a consideration between the mortgagee and the grantee of the mortgagor, to which the mortgagor Gross and Brandt, as grantee, were not parties, which as such, by an act of the mortgagee, recognized and accepted the subsequent grantee, George A. Allen, and such subsequent grantee only as the principal debtor. The mortgagee thus estopped himself from holding the mortgagor as principal alone, or with the grantee, having entirely disregarded the mortgagor, when he, the mortgagee, for a valuable consideration granted an extension of the debt to the grantee.

The opinion in *Fish v. Glover* evidently is misinterpreted by the plaintiff in error, and as evidence of that fact we find that at page 91, the court quoted from Jones on Mortgages as follows: "The mere assignment by the mortgagor of his interest in the mortgaged premises to a third person who agrees to pay off the mortgage, does not release the mortgagor. There is no novation unless there be something to show that the mortgagee has released the mortgagor, and has agreed to look solely to the purchaser for payment of the mortgage debt. There must be a substitution of a new obligation for the old one, and the new obligation must be a valid one."

In addition to the case of *Fish v. Glover,* the court in *Elwell v. Hicks,* and *Morganroth v. Pink, supra,* refer to the decisions in *Schloten v. Barber,* 217 Ill. 148,

and *Webster v. Fleming,* 178 Ill. 140. In *Fish v. Glover* there was no fact that showed an extension of the time of payment by the holders of the notes, to the last grantee, who assumed the payment of the incumbrance. In *Scholten v. Barber, supra,* the grantees were grantees under quitclaim deeds in which no reference was made of the incumbrance, and the facts did not show any extension of the time of payment of the indebtedness secured by the incumbents, and in the case of *Webster v. Fleming, supra,* there was no extension of the time of payment of the indebtedness.

It appears, therefore, that the Supreme Court cases relied upon, viz., *Webster v. Fleming,* 178 Ill. 140; *Scholten v. Barber,* 217 Ill. 148, are not authority for the conclusions reached in *Elwell v. Hicks* and *Morganroth v. Pink, supra.* Plaintiffs in error rely on the cases of *Keller v. Ashford,* 133 U. S. 610; *Denison University v. Manning,* 65 Ohio St. 138. These cases, together with a number of others are reviewed in *In re Roth,* 272 Fed. 516, which holds against the contention of the plaintiffs in error and supports that of the defendants in error, and among other things says: ''If, after learning of the change of relationship effected by the agreement between the mortgagor and mortgagee, he sees fit to enter into contractual relations with the grantee, then he, in a sense, makes himself a party thereto, and must in so contracting and henceforward deal with the parties in view of that changed relationship. This imposes upon him no hardship, and does not against his will alter his original contract. If he by this contract with the grantee or thereafter releases the grantee, or by valid agreement extends the grantee's time of payment, or otherwise alters the terms of the original obligation, no good reason is perceived why the rule applicable as between principal and surety should not be applied to him.''

The contention of the defendants in error is fully sustained in *Wyatt v. Dufrene,* 106 Ill. App. 214. The

contention of defendants in error is also supported in *Johnston v. Paltzer,* 100 Ill. App. 171, and *Bascom v. Fox,* 167 Ill. App. 1. In discussing the questions bearing upon the rule involved in the instant case, in *Brosseau v. Lowy,* 209 Ill. 405, at page 410 the court said: "In the case at bar, Coombs, the trustee in the trust deed, at the solicitation and request of one or both of the Boenerts, and without the knowledge of the mortgagor, Ziese, not only extended the time of payment of the indebtedness, but released more than enough of the land covered by the trust deed necessary to make good the entire debt; so the mortgagor must have been released, even as to the liability of the surety, which relation he might otherwise have held."

*Union Mut. Life Ins. Co. v. Hanford,* 143 U. S. 187, was a suit in equity filed by the Union Mutual Life Insurance Company, a corporation of Maine, against Hanford, et al. citizens of Illinois, to foreclose a mortgage on land in Chicago, and to obtain a decree for any balance due the plaintiff above the proceeds of the sale. Fake and wife, two of the defendants, were defaulted. Hanford and Chase answered. The principal defense relied upon by Hanford and Chase was that they were discharged from personal liability on the notes by the extension of the time of payment, without their consent. In its opinion, the court, among other things, said: "By the law of Illinois, where the present action was brought, as by the law of New York and of some other states, the mortgagee may sue at law a grantee who, by the terms of an absolute conveyance from the mortgagor, assumes the payment of the mortgage debt. *Dean v. Walker,* 107 Ill. 540, 545, 550; *Thompson v. Dearborn,* 107 Ill. 87, 92; *Bay v. Williams,* 112 Ill. 91; *Burr v. Beers,* 24 N. Y. 178; *Thorp v. Keokuk Coal Co.,* 48 N. Y. 253. According to that view, the grantee, as soon as the mortgagee knows of the arrangement, becomes directly and primarily liable to the mortgagee for the debt for which the mortgagor was already liable

to the latter, and the relation of the grantee and the grantor towards the mortgagee, as well as between themselves, is thenceforth that of principal and surety for the payment of the mortgage debt. Where such is held to be the relation of the parties, the consequence must follow that any subsequent agreement of the mortgagee with the grantee, without the assent of the grantor, extending the time of payment of the mortgage debt, discharges the grantor from all personal liability for that debt. *Calvo v. Davies,* 73 N. Y. 211; *Home Nat. Bank of Chicago v. Waterman,* 134 Ill. 461, 467.

"The case is thus brought within the well settled and familiar rule that if a creditor, by positive contract with the principal debtor, and without the consent of the surety, extends the time of payment by the principal debtor, he thereby discharges the surety; because the creditor, by so giving time to the principal, puts it out of the power of the surety to consider whether he will have recourse to his remedy against the principal, and because the surety cannot have the same remedy against the principal as he would have had under the original contract; and it is for the surety alone to judge whether his position is altered for the worse.   *   *   *   In the case at bar, the mortgagee, immediately after the absolute conveyance by the mortgagors, was informed of and assented to that conveyance and the agreement of the grantee to pay the mortgage debt, and afterwards received interest on the debt from the grantee; and the subsequent agreement by which the mortgagee, in consideration of the payment of a sum of money by the grantee, extended the time of payment of the debt, was made without the knowledge or assent of the mortgagors. Under the law of Illinois, which governs this case, the mortgagors were thereby discharged from all personal liability on the notes, and the Circuit Court rightly refused to enter a deficiency decree against them."

In Jones on Mortgages, 7th Ed. section 741, he says: "A purchaser who assumes the mortgage becomes as to the mortgagor the principal debtor, and the mortgagor a surety; but the mortgagee, unless he has assented to such an arrangement, may treat both as principal debtors. * * * The change of position can only be brought about, as regards the mortgagee, by his voluntary agreement to accept the grantor and grantee in their relation of principal and surety. * * * The mortgagee may release the mortgagor from his personal liability in such case without discharging the land, or the grantee, who assumed the debt. But he cannot release the grantee, who has thus become the principal debtor, without releasing the mortgagor who has become the surety. He may, by his dealings with the purchaser and mortgagor, recognize the former as the principal debtor, and the latter as surety toward himself. Any material alteration of the mortgage contract will discharge the mortgagor." In section 742, he goes on to say:

"A purchaser having assumed the payment of an existing mortgage, and thereby become the principal debtor, and the mortgagor a surety of the debt merely, an extension of the time of payment of the mortgage by an agreement made upon a valid consideration between the holder of it and the purchaser, without the concurrence of the mortgagor, discharges him from all liability upon it. In such case the mortgagor's liability is extinguished, notwithstanding the agreement of the extension between mortgagee and grantee expressly declared that it should not impair the security or any condition of the bond and mortgage."

In *George v. Andrews*, 60 Md. 26, 45 Am. Rep. 706, it is said that when a mortgagor sells the mortgaged property to one who agrees to pay the debt for which the security was given, he has the right upon any default by his grantee, in the payment of the principal or interest, to have the property immediately sold,

and this right can be exercised by a demand upon the mortgagee to pursue his remedy against the property, a demand which the latter cannot disregard; and that when, by a valid agreement between himself and the grantee for an extension of the time of payment, the mortgagee deprives himself of the ability to meet such demand from the mortgagor, the latter is released from all personal liability.

Where the grantee of mortgaged premises assumed and agreed to pay the mortgage debt, and subsequently made an arrangement with the mortgagee for an extension of the time of payment, the court in *Codman v. Deland,* 231 Mass. 344, 121 N. E. 14, said that by the agreement with the mortgagee, the grantee became the principal debtor, and it follows that the agreement for the extension of time of payment operated to discharge the mortgagor; that the fact that the agreement to pay the debt and to grant the extension of time of payment was embodied in the same instrument was immaterial. The reason upon which the rule rests, that a binding extension of time given by a creditor to a principal debtor, without the consent of the surety, releases the latter, is, that a surety on paying the debt has a right to subrogation; but by subrogation he gets only such rights as the mortgagor actually has; therefore, when the creditor has postponed the debt, the security, on paying it, cannot sue the principal until the extension expires; but the surety, by the only contract to which he has ever consented, has a right to so sue the principal at any day after the debt matured; hence, the extension deprives him of his right, and from that fact the law conclusively presumes an injury to him and releases him from liability.

In the case at bar the extension agreement contained a provision to the effect that all of the provisions, stipulations, powers and covenants in the principal notes and trust deed shall stand and remain unchanged. It is the contention of plaintiffs in error that this lan-

guage shows an intent that the mortgagor was not to be released from his obligation, and that the extension agreement was intended in no manner to affect him.

In *Metzger v. Nova Realty Co.*, 214 N. Y. 26, an extension agreement was as follows: "Nothing herein contained shall impair the security now held for said debt, or any condition or agreement contained in said bond and mortgage, which bond and mortgage the party of the second part hereby ratifies and confirms as modified by this agreement." In its opinion the court said: "We may inquire what was the situation of the parties on May 1st, 1910. The plaintiff had without the consent of Nova Realty Company extended the time of payment of the principal sum secured by the bond and mortgage for a period of three years. He had thereby denied to himself the right to foreclose the mortgage immediately after May 1st, 1910, and the mortgage by reason of the extension of time not being due the Nova Realty Company could not pay the debt to the plaintiff and become substituted to the mortgage security and proceed against the land by foreclosure. Had it paid the mortgage to the plaintiff and undertaken to foreclose the same it would be met by the defense that the mortgage debt was not due. If the Nova Realty Company demanded of the plaintiff that the mortgage be foreclosed, such demand would be futile; plaintiff had by the agreement to extend the time of payment created a condition which would estop him from maintaining such action.

"We think it clear that by the action of the plaintiff, the mortgagee, he denied to the Nova Realty Company the equitable rights vested in it. If he could legally extend the time of payment for three years without the consent of the company, he could make a like extension for a period of ten years or even a greater number of years, and, upon his theory, continue the liability of the Nova Realty Company, upon the bond."

In *Maier v. Thorman,* — Tex: Civ. App. —, 234 S. W. 239, it was held that the mortgagor was released from personal liability on a note secured by a mortgage by an extension of the time of payment given by the mortgagee to a purchaser of the property who had not assumed payment of the debt, without the knowledge and consent of the mortgagor, although the extension expressly provided that the holder of the note, by granting such extension, did not in any way waive, lose or relinquish any of the liens securing the same or of the personal liability of any persons now liable thereon.

From what is disclosed by the record there can be no question but what Albee, the trustee, received a consideration for making a vital alteration in the terms of the original contract made between himself and the mortgagor, Gross; he thereafter looked to Allen for primary liability, having failed to consider the right of either Gross or Brandt, when he changed the terms of the contract, calling for payment of the notes.

While we recognize that the decisions have not been uniform upon the question as presented by the record in this proceeding, after an examination of numerous authorities, we are of the opinion that the weight of authority sustains the contention of the defendants in error, and being of that opinion, the decree and judgment of the circuit court of Winnebago county is affirmed.

*Affirmed.*