J. N. Douglass and Bret A. Douglass, Defendants in Error, v. Anton Ullsperger and Maria Ullsperger, Plaintiffs in Error.

Gen. No. 32,914.

Heard in the first division of this court for the first district at the October term, 1928. Opinion filed January 21, 1929. Rehearing denied February 4, 1929.

ZIMMERMAN & CLARK and ROBERT L. McDOUGAL, for
plaintiffs in error; EDWARD A. ZIMMERMAN and ROBERT
L. McDOUGAL. of counsel.

KNAPP & CAMPBELL, for defendants in error; PAUL
R CONAGHAN, of counsel.

MR. PRESIDING JUSTICE O'CONNOR delivered the opin-
ion of the court.

J. N. Douglass and Bret A. Douglass, the payees of a
promissory note dated April 2, 1918, brought an ac-
tion in debt against Anton Ullsperger and Maria
Ullsperger, the makers of the note, to recover a balance
of $4,059.97, claimed to be due and unpaid. After-
wards by leave of court, plaintiffs filed an amended
declaration in assumpsit, claiming a balance due upon
the note. The jury was withdrawn and the cause sub-
mitted to the court. There was a finding in favor of
the plaintiffs and against the defendants for $3,823.85,
judgment was entered for this amount, and the de-
fendants prosecute this writ of error.

The facts in brief compass are that on April 1, 1918,
the defendants purchased from plaintiffs real estate
located in California, where it appears that all parties
lived at that time. The purchase price was $21,600 and
to secure the payment of $14,200 of the purchase price
the defendants executed their two promissory notes,
one for $2,200 due on or before February 1, 1919, and
the other for $12,000, being the note in question, due
on or before January 1, 1923. The notes bore interest
at 7 per cent, payable semiannually, and to secure the
payment of the notes the defendants executed a mort-
gage on the real estate. Shortly after the purchase
of the property by the defendants and on August 19,
1918, the defendants conveyed the property to John
and Jim Zenos. The deed, which the parties seem to
agree was a warranty deed, made no mention of the

mortgage but on the trial there was some oral testimony to the effect that the Zenoses agreed to pay the mortgage. On February 1, 1919, when the $2,200 note fell due, it was paid by the Zenoses and on June 22, 1921, the Zenoses conveyed the property by warranty deed to Frank L. Powell and Bertha M. Powell, his wife, as joint tenants. The conveyance was made subject to the mortgage of $12,000. Afterwards the Douglasses pledged the mortgage and the $12,000 note with the Mortgage Guarantee Company as collateral to secure an indebtedness of $9,000 which they owed the mortgage company, and on May 27, 1924, the mortgage company filed its bill to foreclose the mortgage in California. The defendants here were made defendants to the foreclosure proceeding and were served by publication. They did not enter their appearance or appear in the cause. There was a decree of foreclosure, the property was sold and a deficiency decree entered. Afterwards the mortgage company delivered back to the Douglasses the mortgage and note showing the deficiency as the balance due on the note, which deficiency is sought to be recovered in the instant case. In its bill of foreclosure, which was verified, it was alleged "that on February 6, 1923, all the parties in interest to said mortgage executed an agreement extending the time of payment of the $12,000 note to January 1, 1926," and that the interest on the note was raised from 7 to 8 per cent.

The plaintiff J. N. Douglass testified by deposition. He was shown the bill of complaint filed in the foreclosure proceeding and testified he had read it and that the statements contained in it were true and correct.

The defendant Anton Ullsperger testified on the trial that he did not know whether the time of payment of the $12,000 had been extended and that he did not know anything about an extension.

148

A great many points are made and argued in the briefs but we think they are all immaterial except the contention of the defendants that the time of payment of the $12,000 note was extended without the knowledge or consent of the defendants, and in such circumstances, under the law, they were released from liability. We think this contention must be sustained.

Since the record shows that the time of payment of the $12,000 note was extended long after the defendants had sold the property, and the interest rate raised from 7 to 8 per cent, and since it further appears that the Zenoses paid the $2,200 note secured by the mortgage after the property had been transferred by the defendants to them, and since it further appears that after the defendants sold the property in August, 1918, and they paid nothing on account of the principal and interest of the mortgage, but that the same was paid by the Zenoses and the Powells, we think the burden was on the plaintiffs to show that the defendants were parties to the extended agreement, and they having failed to do so, the defendants were released. Moreover, we think the evidence shows that the defendants were not parties to the extension agreement. Anton Ullsperger testified that he knew nothing about a renewal agreement, which is equivalent to saying that he was not a party to it. And when this is taken into consideration with the fact that the defendants had transferred the property in 1918 and the time of the payment of the note was extended from February 6, 1923, to January 1, 1926, we think it appears that the defendants were not parties to the extension agreement.

Whether the mortgagor is released from liability where he conveys property subject to the mortgage, which his grantee either orally or in writing assumes and agrees to pay, and thereafter the mortgagee enters into an extension agreement with the grantee,

without the knowledge of the mortgagor, is the subject of conflicting opinion. Mr. Justice Gray in *Union Mut Life Ins. Co. v. Hanford,* 143 U. S. 187, said: "Few things have been the subject of more difference of opinion and conflict of decision than the nature and extent of the right of a mortgagee of real estate against a subsequent grantee who by the terms of the conveyance to him agrees to assume and pay the mortgage." The conflict of opinion on this question seems to be still as great as in 1892, when Mr. Justice Gray wrote the opinion above quoted from. In *Morganroth v. Pink,* 227 Ill. App. 244, and other cases decided in this State, it was held that a mortgagor was not discharged under circumstances similar to those before us, and on December 11, 1922, the Supreme Court of this State denied certiorari in the *Morganroth* case, but in the late case of *Albee v. Gross,* 250 Ill. App. 98, where there is an exhaustive review of the authorities, it was held, under circumstances similar to those above stated, that the mortgagor was released and on December 19, 1928, the Supreme Court denied certiorari in that case. In view of these facts we are of the opinion that in the instant case the mortgagors were released from liability under the facts above set forth. It therefore follows that the judgment of the circuit court of Cook county must be reversed.

*Judgment reversed.*

McSurely and Matchett, JJ., concur.